UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELLY WALLIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:15 CV 01666 DDN ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Kelly Wallis for disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434 and 1381 et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the defendant Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on November 28, 1970. (Tr. 30). She filed her applications for benefits in October 2011. (Tr. 93, 161). She alleged an onset date of disability of January 14, 2011, due to seizure disorder, left shoulder numbness, and back and hip pain. (Tr. 214). Plaintiff's claims were initially denied on February 7 and 8, 2012 (Tr. 93-101, 106-112). Thereafter, she requested a hearing before an ALJ. (Tr. 113).

On May 19, 2014, following a hearing, the ALJ issued a decision concluding that plaintiff was not disabled under the Act. (Tr. 20-32). The Appeals Council denied her request for review on September 1, 2015. Thus, the decision of the ALJ stands as the final decision of the Commissioner. (Tr. 1).

## II. MEDICAL HISTORY AND OTHER HISTORY

On February 4, 2011, neurologist Bashar Mohsen, M.D. performed a follow-up medical examination of plaintiff for her seizures. Plaintiff denied having symptoms of depression, suicidal ideations, hallucinations, or memory loss. (Tr. 323). Dr. Mohsen noted that plaintiff did not appear nervous or anxious; appeared oriented to person, place, and time; and did not appear to be distressed. *Id.*

On October 17, 2011, plaintiff started reporting being anxious and depressed. (Tr. 338-40). However, Dr. David Lardizabal, M.D., noted she continued to display a normal affect, normal judgment and insight, and fluent speech, and she did not appear to be distressed. (Tr. 338-40). She also appeared alert and oriented to person, place, and date. (Tr. 340). She could recall remote events and follow multi-step commands. *Id.* The doctor assessed her with a mood disorder, generalized anxiety, and nightmares. *Id.*

On February 1, 2012, plaintiff visited James Felts, M.D., for a well-woman examination and reported having panic attacks first thing in the morning. (Tr. 365). The doctor prescribed her anti-anxiety medication, but noted she did not appear to be distressed and recommended she return one year later. (Tr. 365-66).

On February 7, 2012, Steven Akeson, Psy.D., reviewed plaintiff's file. (Tr. 93-97). He did not perform a consultative examination, but he found that plaintiff's mental conditions were not severe impairments and only mildly restricted plaintiff's daily living; social functioning; and concentration, persistence, or pace. *Id.*

On June 4, 2012, plaintiff reported having panic attacks three times a week. (Tr. 368). Dr. Felts continued to indicate she did not appear in distress. (Tr. 368). The doctor diagnosed plaintiff with panic disorder with agoraphobia and prescribed her an anti-depressant. (Tr. 368).

Plaintiff's symptoms appeared to be managed beginning July 2012. (Tr. 370, 372, 376). During appointments on July 2, 2012; August 15, 2012; November 7, 2012; and May 15, 2013, Dr. Felts continued plaintiff's medication for depression and anxiety, but noted she consistently appeared to not be in distress. (Tr. 370, 372, 376).

On September 13, 2013, plaintiff returned to Dr. Felts for an evaluation for depression, and reported feeling sad, crying, having panic attacks, and generally not wanting to go anywhere for the last few months. (Tr. 378). She also stated that she had situational stress due to taking care of her husband's grandmother "24/7." (Tr. 378). The doctor noted she did not appear in distress but diagnosed her with depression and panic disorder with agoraphobia. (Tr. 378). Dr. Felts prescribed anti-depressant and anti-anxiety medications. (Tr. 379).

On October 7, 2013, plaintiff reported being in a better mood, and that she went to a wedding and car races "without problem." She still reported being anxious when she went to Walmart. She continued to report being stressed due to caring for her husband's grandmother. Dr. Felts noted she appeared in no acute distress, but increased her anti-depressant medication and continued the anti-anxiety medication. (Tr. 380).

On November 13, 2013, plaintiff reported her moods were better and she was able to go to Walmart, but she still had situational stress because her grandmother was up at night. Dr. Felts noted she did not appear to be in distress but prescribed a sleep aid. (Tr. 382).

The treatment records reflect that the only functional restriction her treating providers imposed was that she could not drive or ride her husband's motorcycle due to her seizures, not her depression. (Tr. 29, 69, 382, 388).

**Plaintiff's Testimony at the ALJ Hearing**

On January 7, 2014, plaintiff, then 43 years old, appeared and testified to the following at a hearing before the ALJ. (Tr. 39-92).

Plaintiff complained of daily "overwhelming" panic attacks with increased heart rate, racing thoughts, and an inability to sleep. *Id.* She complained that her panic attacks affect her ability to concentrate, though she is able to work through panic attacks to prepare breakfast and get her husband and son out of the door because "[i]t's only for a half hour, and I have to." (Tr. 59-61, 79).

Following a seizure, plaintiff testified she may become "kind of wishy-washy in the head" for 24 to 36 hours. (Tr. 75). She can become groggy and forgetful and may slur her words or say them backwards, though she is still able to follow and understand a story plot when watching TV. (Tr. 75, 79).

Finally, plaintiff stated that she does not want to go anywhere and becomes anxious when shopping at Wal-Mart, but admitted that she shops at Wal-Mart weekly with her sister. (Tr. 46, 60, 74).

Despite these complaints, plaintiff acknowledged that on a bad day, she could still make breakfast daily, pack her husband's and son's lunches, do the laundry, watch TV, get her son a snack after school, cook "Hamburger Helper" or chicken and dumplings for dinner, attend her son's baseball games during the summer, wash dishes by hand, text and talk to others on her cell phone, and sometimes help her son with his homework. (Tr. 59-67). She noted that over several good days, she vacuums, dusts, mops and sweeps for hours at a time. (Tr. 54-55). Though she described a need to lie down often, this appeared to be due to pain rather than depression or anxiety. (Tr. 55, 66-67).

**Examination of the Vocational Expert by the ALJ**

Plaintiff previously worked as an emergency room coordinator, a medical receptionist, a newspaper screen printer, and a circulation manager. (Tr. 84). During the hearing, the ALJ posed three hypothetical individuals to the vocational expert (VE). (Tr. 85). The first is not relevant to this review as it only discussed physical limitations. *Id.* In the second hypothetical, the ALJ asked if a person of plaintiff's age, education, and work experience with the following limitations would be able to work: someone who can only lift and carry up to twenty pounds occasionally and ten pounds frequently; can stand and walk for thirty minutes at a time for two hours of an eight-hour workday; can sit for 45 minutes at a time for two hours of an eight-hour day; can occasionally climb ramps or stairs; can never climb ladders, ropes, and scaffolds; must avoid exposure to unprotected heights; and is limited to "simple, as defined in the DOT, as SVP levels one and two,

routine, repetitive tasks, with one or two step instructions, and no production quotas, with emphasis being on a per shift rather than a per hour basis." (Tr. 84-85). The VE testified that these limitations would rule out plaintiff's past work but not work altogether. (Tr. 86). Such an individual could be employed as, for example, a labeler, laundry folder, or cleaner polisher. *Id.*

The ALJ then presented a third hypothetical, asking the VE what work an individual of plaintiff's age, education, and work experience could perform with the following limitations: someone who can only lift up to ten pounds occasionally; can stand and walk for two hours and sit for six hours per eight-hour day with normal breaks; must avoid exposure to all excessive vibrations, hazardous machinery, and unprotected heights; must avoid operating a motor vehicle; and, like the first hypothetical, is limited to only "routine, repetitive tasks with one or two step instructions." (Tr. 87-88). The VE testified that such an individual could perform plaintiff's previous work of medical receptionist, as normally performed, as well as the positions of document preparer, addresser, and telephone quotation clerk. (*Id*). The VE testified that this employment would not be affected by the added requirement of an additional fifteen minute break in the workday, because the individual would still be on task 85 percent of the workday. (Tr. 88-89). The VE testified that this was not inconsistent with the Dictionary of Occupational Titles (DOT), though it was not addressed by it. (Tr. 89).

In obtaining the VE's testimony, the ALJ did not ask whether plaintiff could "understand, carry out, and remember instructions; use judgment; respond appropriately to supervisors, co-workers, and work situations; and deal with work changes." *See* Pl.'s Br. at 8-9. Counsel for plaintiff asked the VE what jobs would remain if impaired concentration and memory were added to the list of hypothetical impairments. The VE testified that, if impaired memory and concentration affected the ability of the hypothetical individual to stay on task 85 percent of the workday, then it would eliminate all positions. (Tr. 90).

**The Decision of the ALJ**

On March 23, 2013, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 11-23). The ALJ found that plaintiff had not engaged in substantial gainful activity since her June 14, 2011 alleged onset date. (Tr. 22). The ALJ found that plaintiff had the severe impairments of seizures, fibromyalgia, affective disorder, and panic disorder. (Tr. 22-23). However, the ALJ found plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the listings of 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (Tr. 23-25).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> [She can perform] sedentary work as defined in 20 CFR 404.1567(a) except she can lift up to 10 pounds occasionally, stand and/or walk approximately 2 hours per 8 hour[] day, and sit approximately 6 hours in an 8-hour workday with normal breaks. She should avoid operation of a motor vehicle and exposure to excessive vibrations, unprotected heights, and hazardous machinery, defined as unshielded moving machinery. She is limited to simple work, as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2, with routine and repetitive tasks and 1-2 step instructions. She requires one additional 15-minute break per work [day].

(Tr. 25).

With respect to plaintiff's mental RFC, the ALJ found that because the claimant's mental impairments did not cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied. (Tr. 23-26). The ALJ found that the extent of plaintiff's daily activities was inconsistent with her claims of being disabled and that plaintiff's work-related mental limitations did not satisfy the criteria set out in Listings 12.04 or 12.06. *Id.* The ALJ also found that the record revealed less than disabling symptoms and lacked any documentation of mental restriction. (Tr. 27-29). The ALJ found discrepancies between plaintiff's treatment history and her claimed mental impairments. (Tr. 27-29). The treatment notes did not support plaintiff's claims that her

depression and anxiety were disabling; instead, the examination records reflected plaintiff received minimal and conservative treatment, consisting mainly of appointments with her providers to manage her medication for her depression and anxiety, and that her symptoms were managed with medication. (Tr. 24-30).

The ALJ concluded that plaintiff had only mild restrictions in her activities of daily living and social functioning. (Tr. 24-25). With regard to concentration, persistence, or pace, the ALJ gave plaintiff the benefit of the doubt and found her affective disorder and panic disorder had moderate influence on her capacity to work. *Id.*

The ALJ gave little weight to the opinion of Dr. Akeson, who did not examine plaintiff but merely reviewed her medical records. (Tr. 30, 93-103). Dr. Akeson opined that plaintiff's mental impairments are nonsevere. *Id.* The ALJ reasoned that this opinion was inconsistent with the rest of the record: "the records from Dr. Felts and the claimant's hearing testimony reflect these impairments cause more than minimal limitations." (Tr. 30).

Relying on the VE's testimony, the ALJ found that plaintiff could perform the requirements of jobs including production worker, hand packer, and laundry worker with one additional 15-minute break during the workday. (Tr. 25-32).

Accordingly, the ALJ found plaintiff was not disabled under the Act. (Tr. 21-23).

### III. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because

substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pate-Fires*, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work ("PRW"). *Id*. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff makes two challenges to the ALJ's decision:

(1) The ALJ incorrectly concluded that plaintiff was not disabled under the Social Security Act even though the RFC determined by the administrative law judge included a limitation that plaintiff be given one additional 15-minute break during each work day.

(2) The ALJ's finding that plaintiff was not disabled is not supported by substantial evidence, because without any finding about plaintiff's mental RFC, the ALJ found that plaintiff could perform sedentary work that was limited to "simple work, as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2, with routine, and repetitive tasks and 1-2 step instructions."

**(1) The additional 15-minute work break per day**

Plaintiff argues that an additional 15-minute work break per day would make her work schedule 38.75 hours per week, not 40 hours. She maintains that this would not constitute "regular and continuing work" under SSR 96-8p. The court finds that even with an additional 15-minute work break daily, substantial evidence supported the ALJ's finding that plaintiff had the ability to perform a regular and continuing schedule.

The Commissioner has interpreted "residual functional capacity" to mean "ordinarily" "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p ¶ 1. The Commissioner has not rigidly defined what "full-time work" must be; SSR 96-8p provides only that it is "ordinarily" "8 hours a day, 5 days a week," recognizing there may be alternative schedules that are equivalent. SSR 96-8p at ¶ 1. The Commissioner further, in the Policy Interpretation of SSR 96-8p, when considering the language "work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)[7]", in footnote 7, which directed the reader to footnote 2, stated:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process.

SSR 96-8p, 1996 WL 374184, at **7, 8.

- 9 -

In this case, the VE, an expert in the field and on such topics, testified that several occupations with significant numbers of jobs available regionally and nationally would allow plaintiff to work full time while only remaining on task for eighty-five percent of the time. (Tr. 31, 83-91). [1] The VE testified that a need for additional breaks is not inconsistent with the DOT, though it is not addressed by it. *Id.*; *cf.* SSR 00-4p. This testimony was based on the VE's own experience. *Id.*

Plaintiff's arguments about the difficulty she might have in obtaining a job are not relevant to the Step Five analysis.[2] The burden is on the Commissioner to prove that jobs exist that plaintiff could perform; it is not the Commissioner's burden to prove that plaintiff would actually obtain those jobs. *See Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014).

> When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00–4p, and we review his decision under the deferential substantial evidence standard.

*Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014). The ALJ's second hypothetical accurately reflected her RFC finding. (Tr. 25, 89). The VE, having contemplated the implications of plaintiff having one additional 15-minute break, testified that the number of jobs available to plaintiff remained the same. (Tr. 88-89) ("That would still allow the

---

[1] Plaintiff argues that the standard lunch break and two 15-minute breaks, in addition to the additional 15-minute break, should be factored in for the purpose of calculating the percentage of time on individual is on task at work, thus exceeding 85 percent of plaintiff's workday. However, while two breaks are normally considered part of the eight-hour workday, lunch is not. *See* 29 C.F.R. §§ 785.18, 785.19. Three breaks totaling 45 minutes would be less than ten percent of an eight-hour workday.

[2] Plaintiff argues that (1) unskilled, low-level workers have more difficulty in obtaining an additional break during the day than accomplished, skilled workers and that (2) accommodating plaintiff by allowing an extra 15-minute break would likely be very problematic, because no employer would be required to make such accommodation, and other employees would certainly want an additional break.

individual to be on task 85 percent of the work day. So, it would not reduce numbers or eliminate the jobs"). The VE testified this was not inconsistent with the DOT. (Tr. 89). This provided the ALJ substantial evidence to rely upon in concluding that plaintiff can perform regular and continuing work. The ALJ adequately explained her decision to credit the VE's testimony. (Tr. 31). Accordingly, the ALJ satisfied her burden to produce evidence that there were a sufficient number of jobs in the economy that plaintiff could perform on a regular and continuing basis.

### (2) Failure to Identify Mental Abilities in the RFC

Plaintiff argues that in finding that plaintiff's mental RFC was "limited to simple, as defined in the DOT as SVP one and two, routine, repetitive tasks, with one or two step instructions," the ALJ failed to determine plaintiff's mental abilities as required by SSR 96-8p. Plaintiff alleged disability based upon, *inter alia*, affective disorder and panic disorder. In articulating plaintiff's RFC, the ALJ did not use words like "understand, carry out, and remember instructions; use judgment; respond appropriately to supervisors, co-workers, and work situations; and deal with work changes." *See* Pl.'s Br. At 9. As a result, plaintiff argues the ALJ failed to obtain the VE's testimony based on plaintiff's mental abilities that would allow the performance of certain jobs. *See* Pl.'s Br. at 8-9.

The court concludes that, contrary to plaintiff's arguments, the RFC determined by the ALJ sufficiently describes plaintiff's mental abilities, is supported by substantial evidence, and supported the hypothetical question to the VE.

The ALJ must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of her limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). An ALJ does not have to rely entirely on one doctor's opinion, nor is she limited to a simple choice of the medical opinions of record when she formulates the RFC. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of

the plaintiff's physicians") (internal citations omitted); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the ALJ, not a plaintiff's doctors. The ALJ must rely on medical sources to "provide evidence" about several factors, including RFC, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

Under the Commissioner's policy on assessing RFC, "nonexertional capacity must be expressed in terms of work-related functions." *Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, at *6 (S.S.A. July 2, 1996). Work-related mental abilities include "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* The RFC need not address each of these abilities, only those that limit work-related activities:

> While some individuals will have a significant restriction of the ability to perform some work-related activities, not all such activities will be precluded by the mental impairment. However, all limits on work-related activities resulting from the mental impairment must be described in the mental RFC assessment.

*Titles II & Xvi: Residual Functional Capacity for Mental Impairments*, SSR 85-16 (S.S.A. 1985). An ALJ must limit her RFC determination to only the impairments and limitations she finds to be credible based on her evaluation of the entire record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). In formulating plaintiff's RFC, the ALJ evaluated the entire record, including the findings of examining and non-examining physicians, plaintiff's testimony, and plaintiff's activities of daily living. The record contains reports from various examining, treating, and non-examining doctors, and was sufficient for the ALJ to make a fair and informed decision.

At Steps Two and Three, the ALJ found plaintiff had mild limitations in activities of daily living and social functioning; moderate limitations in concentration, persistence,

or pace; and no episodes of decompensation. (Tr. 24). The ALJ's assessment of plaintiff's mental RFC identifies work-place limitations in accordance with these findings. The ALJ determined that plaintiff's deficiencies in concentration, persistence, or pace limit her to simple, routine, repetitive tasks at the specific vocational profile (SVP) levels of two or less, with only one- to two-step instructions. (Tr. 25). The ALJ also found that plaintiff requires an additional 15-minute break during the workday. *Id.* To the extent the RFC did not contain limitations related to social functioning, the court finds the ALJ implicitly found plaintiff does not have work-related social limitations. The ALJ's findings are supported by substantial evidence and adequately account for plaintiff's mental limitations. The evidence does not support a greater degree of limitation.

The ALJ noted that for nine months after the alleged onset date of January 14, 2011, plaintiff's treatment notes indicated she consistently appeared alert and was not in distress, with no report of symptoms due to mental conditions. (Tr. 20, 22, 297, 302, 347, 349, 363). At her February 4, 2011 examination, plaintiff denied being depressed and Dr. Bashar Mohsen, M.D., also noted that she did not appear to be depressed. (Tr. 323). On October 17, 2011, plaintiff started reporting being anxious. (Tr. 338-40). The medical records after October 17, 2011, indicate either that plaintiff did not appear in distress, or that plaintiff's symptoms could be managed with anti-depressant, anti-anxiety medications, sleep aid, and appointments with doctors. Importantly, the treatment records reflect that the only functional restriction her treating providers imposed was that she could not drive or ride her husband's motorcycle – due not to her depression, but to her seizures. (Tr. 29, 69, 382, 388).

Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discredited for this reason or if there are inconsistencies in the record as a whole. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). The examination records reflect that plaintiff's symptoms were managed with medication. (Tr. 24-30, 96-101, 320-24, 339-82). She received minimal and conservative treatment, consisting mainly of appointments with her

providers to manage her medication for her depression and anxiety. *Id.* If a claimant's impairment is controlled by treatment or medication, it is not considered disabling. *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).

Additionally, plaintiff regularly reported activities of daily living that were inconsistent with her claims of being disabled. (Tr. 59-66; 222-31). In her January 2011 function report, plaintiff stated that, every day, she makes breakfast, lunch, and dinner; helps her son with his homework; does two loads of laundry; and otherwise cares for her son, husband, and grandmother. (Tr. 224). She reported that it takes her about an hour to prepare each meal. (Tr. 226). She also reported she goes outside every day, cleans her home every three days for about an hour, pays bills, and handles a savings account. (Tr. 226-28). In 2013, plaintiff reported going to a wedding and car races without a problem. (Tr. 380). At her 2014 hearing, plaintiff testimony supported the ALJ's finding that she could, even on a bad day, "make breakfast daily, pack her husband's and son's lunches, pack her son's schoolbag, meet her son when he gets off the bus, get her son a snack after school, cook hamburger helper or chicken and dumplings, sometimes help her son with his homework, attend her son's baseball games during the summer, wash dishes, text and talk to others on her cell phone, and do the laundry." (Tr. 29, 59-66).

While these activities in isolation might be insufficient to discredit plaintiff's subjective complaints, when considered with plaintiff's medical record, and when repeated to the extent plaintiff has testified, they provide a substantial basis for the ALJ's conclusion that plaintiff only experienced mild limitations due to her mental impairments. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding light housework and socializing with friends were insufficient to discredit subjective complaints by themselves, but the extent of these activities, when considered with medical records, supported a finding of not disabled).

Although the RFC does not make specific findings about the work-related functions of understanding or responding to supervision, coworkers, or pressure in a work setting, this does not mean the ALJ overlooked these functions. The functions addressed by the

ALJ's RFC assessment were those where the ALJ found a limitation. In reviewing the record and the ALJ's final decision, the court finds the ALJ implicitly found plaintiff was not limited in any function that was not expressly addressed, and there is no reason to remand to make the findings explicit.

Having decided that the ALJ properly formulated plaintiff's RFC, the court must now address the argument that the ALJ failed to adequately present plaintiff's limitations to the VE. *See* Pl.'s Br. at 8-9. Testimony from a vocational expert based on a properly-phrased hypothetical constitutes substantial evidence at Steps Four and Five. *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996). Plaintiff argues that in presenting hypothetical questions to the VE, the ALJ did not use the words "understand, carry out, and remember instructions; use judgment; respond appropriately to supervisors, co-workers, and work situations; and deal with work changes." *See* Pl.'s Br. at 8-9; Reply Br. at 7. The court finds that, in this case, this was not error.

An ALJ posing a hypothetical question to the VE is not required to include all of plaintiff's alleged limitations. While the hypothetical "must capture the concrete consequences of the claimant's deficiencies," "the ALJ may exclude any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (citations omitted).

The ALJ found that plaintiff has moderate difficulties with regard to concentration, persistence, or pace due to her daily panic attacks with racing thoughts. (Tr. 24). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12(C)(3).

In this case, the ALJ's second hypothetical tracked the language of the plaintiff's assessed RFC: it concerned someone who is capable of doing "simple, as defined in the DOT, as SVP levels one and two, routine, repetitive tasks, with one or two step instructions." (Tr. 25, 85). The court finds that this limitation adequately captures the consequences of plaintiff's mental deficiencies. *See Howard v. Massanari,* 255 F.3d 577,

581–82 (8th Cir. 2001) (holding that an ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captured deficiencies in concentration, persistence or pace); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (holding that a hypothetical including the "ability to do only simple routine repetitive work, which does not require close attention to detail" sufficiently describes deficiencies of concentration, persistence or pace). The ALJ's second hypothetical is more specific than the hypotheticals approved by the Eighth Circuit in *Howard* and *Brachtel*.

In response to the ALJ's second hypothetical, the VE testified that an individual with plaintiff's limitations would be able to obtain work that existed in significant numbers in the national marketplace. (Tr. 30-31, 83-91). The ALJ relied on VE testimony in deciding whether plaintiff could perform past or other work. (Tr. 30-31). Accordingly, the ALJ's decisions at Steps Four and Five were supported by the substantial evidence of proper VE testimony. *See Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996).

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**


Signed on January 23, 2017.